UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                          :

UNITED STATES OF AMERICA,             :

                                          :

       -against-                                 :                    15-CR-153 (VSB)

                                          :                    **OPINION & ORDER**

DEAN JONES,                                :

                             Defendant.      :

                                          :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/27/2018

VERNON S. BRODERICK, United States District Judge:

On April 25, 2017, following a five-day jury trial, Defendant Dean Jones ("Defendant" or "Jones") was convicted of conspiracy to distribute, or possess with intent to distribute, narcotics, in violation of Title 21, United States Code, Section 846. Before me is Jones's motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. For the reasons that follow, Jones's motion is denied.

**I. Background and Procedural History**

     **A.** *The Indictment*

On March 11, 2015, the Government filed a two-count indictment charging Jones in Count One with participating in a robbery on December 21, 2012, and in Count Two with using and carrying a firearm that was discharged in connection with that robbery. (Doc. 1.) The Government filed a five-count superseding indictment on April 14, 2016. (Doc. 50.) On August 8, 2016, after several adjournments, I set trial to begin on April 17, 2017 and directed the Government to file any superseding indictment on or before September 1, 2016. (Doc. 88.) On August 31, 2016, the Government filed a five-count superseding indictment charging: (1) Jones and Maxwell Suero with robbery conspiracy (Count One) and robbery (Count Two); (2) Jones

with a firearms offense in connection with the robbery counts (Count Four); (3) Jones, Suero, Troy Williams, Ralph Hooper, Dequan Parker, Malik Saunders, Richard Graham, Yonell Allums, and Kaheim Allums with participating in an unlawful narcotics conspiracy (Count Three); and (4) all defendants except Graham with a firearms offense in connection with the narcotics conspiracy (Count Five). (Doc. 94.)

Defendants Jones, Hooper, Parker, Saunders, Yonell Allums, Kaheim Allums, Williams, and Graham moved to sever Counts One, Two, and Four (the "Robbery Counts") from Counts Three and Five (the "Narcotics Counts") for improper joinder pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure.[1] (*See* Docs. 95, 97, 101, 102, 113–15.) On October 5, 2016, I orally granted severance of the Robbery Counts from the Narcotics Counts, (Tr. 10/19 21:18-22:15),[2] and I issued a written order detailing my ruling on January 11, 2017, (Doc. 151).

On March 21, 2017—for reasons detailed during conferences held on March 3 and March 16, 2017—I ordered that the seven Defendants named in the Narcotics Counts be tried in two separate trials. (Doc. 183.) The first trial was set to include Jones, Saunders, and Williams and to commence on April 17, 2017. (*Id.*) Saunders and Williams entered guilty pleas prior to the start of trial, and Jones proceeded to trial on his own.

### B. *Trial on the Narcotics Counts*

Jones's trial on the Narcotics Counts (the "Trial") commenced on April 17, 2017. Jones was charged in Count One with conspiring to distribute and possess with intent to distribute more than 280 grams of crack and more than one kilogram of heroin, and in Count Two of possessing a firearm in furtherance of the narcotics conspiracy.

---

[1] Suero took no position with regard to the severance motion. (Doc. 126 at 6.)

[2] "Tr. 10/19" refers to the transcript of the conference held on October 19, 2016.

2

### 1. Count One

At Trial, the Government introduced evidence of Jones's guilt on Count One through, among other things: (1) testimony from two cooperating witnesses and one immunized witness who were involved in Jones's drug conspiracy; (2) testimony from a law enforcement officer who had caught Jones driving south from Vermont with $5,800 in drug proceeds; (3) video and audio of that traffic stop, including of Jones lying to the officer about his name and other information; (4) seizures of crack and heroin from Jones's co-conspirators; (5) evidence of money transfers between co-conspirators, including to Jones both before and after he was incarcerated; (6) phone records showing the frequent communication between and among Jones and his co-conspirators both before and after he was incarcerated; and (7) recorded phone calls of Jones discussing the narcotics conspiracy with his co-conspirators after he was incarcerated.

Steven Christopher, a cooperating witness, testified about the formation and inner workings of the conspiracy and his close relationship with Jones. (*See, e.g.*, Tr. 380–407.) Christopher was, however, subject to extensive cross-examination about, among other things, his prolific criminal history—that included shooting four people when he was twelve and thirteen years old—and his testimony before a Vermont grand jury during which he lied. (*See* Tr. 532–40, 545–84.)

Kim Kuncz, an admitted drug addict and cooperating witness who worked closely with Jones's co-conspirator Williams, gave detailed testimony about her interactions with Jones. Specifically, she personally saw Jones with a bag of up to 100 grams of crack and watched him over the course of several days sell crack and count the money in Ronnie Rickert's house in Vermont. (Tr. 122–23.) Kuncz used some of that crack herself. (Tr. 123.) On another occasion, she watched Jones and Williams package thousands of dollars in drug money at her

own house and smoked crack that Jones gave her. (Tr. 124.) Kuncz was also in the car when Jones was caught with $5,800 in drug proceeds, and she successfully concealed crack, molly, and several thousand more dollars from the police during that incident. (Tr. 126–28.) On another occasion, Jones gave Kuncz 10 grams of crack to sell in Vermont. (Tr. 132.)

Toni Stanley, a witness who testified after being granted immunity, testified about how she personally obtained drugs from Jones in Vermont. Like Kuncz, Stanley was a crack and heroin user, and she also saw Jones at Rickert's house and watched Jones package and sell crack. (Tr. 467–68, 605, 607–08.) Stanley also testified about instances during which she drove Jones from Vermont to New York. She testified that, on one of her trips to New York, she received a traffic ticket for using her phone while driving.[3] (Tr. 614–15.) She also explained that she was paid in drugs for driving and that in one instance she brought heroin and prescription pills back from New York to Vermont. (Tr. 611–14.) The last time Stanley brought Jones to New York, she stashed some of Jones's heroin and prescription pills at her friend's house because Jones did not want to bring them back to New York. (Tr. 616–18.) When Stanley told Jones that she had used some of those drugs, he threatened to kill her. (Tr. 619.)

The testimony of these witnesses—Christopher, Kuncz, and Stanley—was corroborated by other evidence introduced during Trial. Officer Christopher Lora testified about the traffic stop that Kuncz described. Lora stopped a car for having a faulty light as it traveled south from Vermont towards New York late at night; inside were Jones, Williams, Kuncz, and a second woman. Lora found $5,800 in cash on Jones's person bundled in rubber bands, which was consistent with drug proceeds. (Tr. 255–69.) Jones gave a false name during that stop, and he listed his address as 175 West 45th Street, *i.e.*, the inverse of 45 West 175th Street—the location

---

[3] Jones was not in the car when Stanley received this ticket.

4

of the Bronx home base of the narcotics conspiracy. Despite being given instructions by Lora concerning how to reclaim the seized money, Jones never attempted to collect the cash, which he told Lora was the proceeds of a construction job he had been doing in Vermont. (Tr. 270–72.) This stop was captured on video recordings, some of which included audio, that were played at Trial. (GX-701, 702.)[4] The traffic stop corroborating Stanley's trip to New York with Jones was similarly confirmed by both a traffic ticket, (GX-740), and phone records showing Jones and Stanley in contact that day, (GX-613).

Bank and wire transfer records further corroborated the cooperating witnesses. Western Union records showed that co-conspirator Suero sent Jones—in the same alias Jones used during the Vermont traffic stop—$1,000 from Vermont during the conspiracy. (GX-401.) Bank and Western Union records showed the flow of money between co-conspirators in Vermont and co-conspirators in New York. (GX-401A-B; 402A-C.) Phone records further demonstrated the connection between Jones and his co-conspirators, showing a high volume of calls between Jones and co-conspirators Williams, Christopher, Kuncz, Graham, and Suero. (GX-671.)

Jones was arrested on robbery charges in June 2013. The evidence presented at trial demonstrates that even though Jones was incarcerated on the robbery charges, he continued to participate in the narcotics conspiracy: Jones continued to direct Suero's narcotics sales in Vermont, as captured on recorded prison calls, (*see, e.g.*, GX-1201-A); coordinate the narcotics pipeline with Saunders, as also captured on recorded prison calls, (*see, e.g.*, GX-1201G); and reap the benefits of the drug business while in jail, as demonstrated by commissary and financial records showing payments made to him from Saunders, (GX-403; GX-401C).

---

[4] "GX" refers to the exhibits entered in evidence by the Government at the Trial.

### 2. Count Two

With regard to Count Two, the Government also offered evidence. For example, Christopher testified that Jones frequently carried a firearm to protect the business of the narcotics organization. (*See, e.g.*, Tr. 419–20.) Christopher's testimony was corroborated by surveillance video of a robbery that Jones committed with a firearm matching the description of one Christopher had seen Jones with, (GX-502B; Tr. 420), and a recorded phone call in which Jones openly discussed shooting people in retaliation for a robbery of Christopher, (GX-1201-O). However, Kuncz and Stanley both admitted they had never seen Jones with a firearm. (Tr. 242, 611.)

### 3. The Verdict

During its first and only day of deliberations, after sending three notes related to the jury charge and evidence presented during the Trial, the jury convicted Jones on Count One. (Tr. 871, 895.) With respect to the quantities of the controlled substances involved, the jury found that the conspiracy involved (a) 280 grams and more of cocaine base, and (b) 100 grams and more, but less than one kilogram of heroin. (Doc. 228.) In other words, as to heroin, the jury found the lesser-included quantity. The jury found Jones not guilty of Count Two, the firearms offense. (*Id.*)

### C. *Post-Trial Disclosure of Conduct by Christopher*[5]

On or about June 1, 2017, as part of an investigation into contraband smuggling at the Queens Detention Facility ("GEO")—the jail facility where Christopher was being housed—the Government obtained information that Christopher was involved in smuggling activity while

---

[5] The facts in this subsection are taken in substantial part from the Government's Memorandum of Law in Opposition to the Defendant's Motions for a New Trial Under Rule 33, (Doc. 561), and are provided for context for my decision on this motion. I make no findings concerning these facts.

incarcerated. On June 7, 2017, Christopher admitted this misconduct to the Government. During the initial and subsequent post-trial proffer sessions related to the smuggling, Christopher gave a detailed account of his involvement in contraband smuggling and distribution at GEO. In particular, on several occasions between late 2016 and early 2017, Christopher paid two different guards at GEO to smuggle cigarettes, marijuana, and K2 into the facility, which Christopher then used or sold. Christopher ceased his involvement in the smuggling scheme before entering into his cooperation agreement on April 4, 2017. Christopher did not disclose this information to the Government before he entered into his cooperation or before he testified at the April 2017 trial of Dean Jones. On September 28, 2017, Christopher pleaded guilty, pursuant to a non-cooperation plea agreement, to (1) conspiracy to commit bribery and possess contraband in prison, and (2) conspiracy to distribute marijuana—meaning that his cooperation would not apply to his conviction on these offenses. On the same day as Christopher's guilty plea to the smuggling offenses, the Government disclosed the information related to these offenses to Jones's counsel at that time.

On June 1, 2018, Jones filed the instant motion for a new trial on Count One of the Indictment, (Doc. 554), as well as a memorandum of law in support of his motion, (Doc. 555). The Government filed its opposition to Jones's motion on June 11, 2018, (Doc. 561), and on June 15, 2018, Jones filed a reply letter in further support of his motion, (Doc. 566).

## II. Legal Standard

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court has "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). However, the court must "strike a

balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (internal quotation marks omitted). It is the jury's role to weigh the evidence and assess a witness's credibility, and a district court generally "must defer to the jury's resolution" of those issues. *United States* v. *Bell*, 584 F.3d 478, 483 (2d Cir. 2009) (per curiam) (quoting *Sanchez*, 969 F.2d at 1414). Indeed, only in "exceptional circumstances" may a trial judge "intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414.

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134. "The trial court must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict." *Id.* (quoting *Sanchez*, 969 F.2d at 1414). "There must be a real concern that an innocent person may have been convicted. It is only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'" *Bell*, 584 F.3d at 483 (quoting *Sanchez*, 969 F.2d at 1414). "The defendant bears the burden of proving that he is entitled to a new trial . . . ." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

### III. <u>Discussion</u>

As an initial matter, Jones does not articulate a consistent theory for granting him a new trial. He does, however, appear to advance arguments based on the newly-discovered impeachment evidence—evidence that Christopher smuggled and distributed contraband in prison—which was in violation of his cooperation agreement with the Government. As noted above, this new impeachment evidence was not available to Jones at the Trial because Christopher admitted to his crimes only after the jury returned the verdict of guilty against Jones on Count One of the Narcotics Counts.

### A. *The New Impeachment Evidence and Cross-Examination*

Jones argues that he is entitled to a new trial because he was unable to effectively cross-examine Christopher at Trial. Specifically, Jones contends that, had he known of Christopher's bribery of prison guards and distribution of contraband in prison, he could have used that information to more effectively cross-examine Christopher.[6] In so doing, he cites cases for the proposition that the Confrontation Clause guarantees defendants the right to cross-examine witnesses. Because I find that the new impeachment evidence against Christopher is cumulative and merely provides an additional basis on which Jones could have impeached Christopher, I disagree.

### 1. Applicable Law

"A motion for a new trial on the ground of newly discovered evidence is granted 'only *in the most extraordinary circumstances.*'" *United States v. Parkes*, 497 F.3d 220, 233 (2d Cir. 2007) (quoting *United States v. Spencer*, 4 F.3d 115, 118 (2d Cir. 1993)). "Newly discovered evidence supports the grant of a new trial only if the defendant demonstrates that the evidence could not have been discovered through the exercise of due diligence before or during trial, and that the evidence is 'so material and noncumulative that its admission would probably lead to an acquittal.'" *Id.* (quoting *United States v. Zagari*, 111 F.3d 307, 322 (2d Cir. 1997)); *see also Spencer*, 4 F.3d at 119 ("[T]he discovery of new evidence which merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify the grant of a new trial." (quoting *United States v. Sposato*, 446 F.2d 779, 781 (2d Cir. 1971))). "New impeachment evidence is *not* material, and thus a new trial is *not* required when the

---

[6] Although Jones makes passing reference to the fact that "Christopher lied at Mr. Jones's narcotics trial," (Def.'s Mem. 4), he does not assert at any point that Jones committed perjury, nor does he cite any case law or specific testimony to support such an argument. "Def.'s Mem." refers to Jones's Memorandum of Law in Support of Defendant's Motion for a New Trial, filed June 1, 2018. (Doc. 555.)

suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *Parkes*, 497 F.3d at 233 (quoting *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996)). For this reason, courts in this Circuit have routinely and properly denied motions for a new trial based on the discovery of criminal activity by cooperating witnesses who were already impeached on other grounds. *See, e.g.*, *id.*; *United States v. Lowe*, 664 F. App'x 38, 44–45 (2d Cir. 2016) (summary order); *United States v. Jereis*, 597 F. App'x 653, 655 (2d Cir. 2015) (summary order); *United States v. Williams*, 526 F. App'x 80, 81–82 (2d Cir. 2013) (summary order).

### 2. Application

Jones's argument rests on the discovery of new impeachment evidence against Christopher. Specifically, Jones argues that Christopher never mentioned during his testimony that he bribed correction officers to bring contraband into GEO, which later came to light after the Trial had concluded. Defendant contends that, "[h]ad Christopher admitted these additional serious crimes prior to Trial, his credibility would have been much more seriously attacked—the result of which would have likely been an acquittal." (Def.'s Mem. 5.) As an initial matter, in stating that Christopher's "credibility would have been much more seriously attacked," (*id.*), Jones essentially concedes that Christopher's post-trial disclosure of the additional crimes amounted to cumulative impeachment material. Moreover, the impeachment material at issue does not directly contradict the Government's case, and it is well-settled case law in this Circuit that such evidence does not warrant a new trial under Rule 33. *See, e.g.*, *Spencer*, 4 F.3d at 119. Jones had ample evidence with which to impeach Christopher, including, among other things, (i) his shooting of four men—likely killing them—when he was approximately twelve or thirteen years old; (ii) his failure to adhere to his cooperation agreement by smoking marijuana in jail;

and (iii) his admission that he lied during prior grand jury testimony.[7] (*See* Tr. 54–84, 512–16, 532–40, 586–87; GX-13.) Simply put, Jones has not demonstrated that the new impeachment evidence is "so material and noncumulative that its admission would probably lead to an acquittal." *Parkes*, 497 F.3d at 233 (internal quotation marks omitted). For these reasons, I find that the new impeachment evidence is cumulative, and the discovery of this evidence does not warrant a new trial.

      **B.**    *Multiple Conspiracies*

Jones also argues, albeit only in his reply,[8] that he is entitled to a new trial because the Government's evidence at Trial was insufficient to convict him of the conspiracy charged. (Def.'s Reply 1 ("The critical position of the Defendant, however, is that even if the jury found Kimberly Kuncz and Toni Stanley credible, their testimony did not support Mr. Jones's membership in the conspiracy charged in this indictment.").)[9] Because Jones was the only Defendant on Trial and was not otherwise prejudiced by the Court's refusal to give a multiple conspiracy charge, Jones's argument fails.

---

[7] Moreover, although Defendant argues that the severity of the new impeachment evidence is different, he does not appear to dispute the fact that the conduct is of a similar ilk—criminal conduct disclosed after Christopher entered into his cooperation agreement with the Government. (Def.'s Mem. 5 ("But, had the jury learned of an organized conspiracy involving the bribery of correction officers to smuggle into the jail a drug which is far more serious and dangerous than marijuana, counsel's arguments [at Trial] would have been raised to an entirely different level.").) Although the crimes at issue are by no means identical, the fact that they are similar in kind provides further support that the new impeachment evidence is duplicative material.

[8] It is well-established that arguments must be made in a party's moving brief, not in a reply brief. *See, e.g.*, *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief."); *United States v. Greer*, 285 F.3d 158, 170 & n.3 (2d Cir. 2002) (deeming as waived an argument raised for first time in reply brief). Therefore, I could decline to consider the multiple conspiracies argument. However, Jones implies in his reply that he made the multiple conspiracies argument in his moving brief, and I address the argument here to the extent that his moving brief could be read to raise such an argument.

[9] "Def.'s Reply" refers to Jones's letter dated June 15, 2018, which was submitted in further support of his motion pursuant to Rule 33. (Doc. 566.)

11

### 1. Applicable Law

A defendant can establish a multiple conspiracies defense if: "(1) the indictment charged a single conspiracy, but the proof disclosed several independent conspiracies, and (2) [the] defendant was so prejudiced by this variance as to be denied a fair trial." *United States v. Pena*, 274 F. App'x 84, 85 (2d Cir. 2008) (summary order) (quoting *United States v. Desimone*, 119 F.3d 217, 225–26 (2d Cir. 1997)). However, a "single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." *United States v. Payne*, 591 F.3d 46, 61 (2d Cir. 2010) (internal quotation marks omitted). In addition, "[c]hanges in membership, differences in time periods, and/or shifting emphases in the location of operations do not necessarily require a finding of more than one conspiracy." *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006). Ordinarily, a multiple conspiracy charge is inappropriate in the context of a single-defendant case. *See United States v. Cusimano*, 123 F.3d 83, 89 (2d Cir. 1997) ("It is generally more difficult to make such a showing where, as here, the trial was a short trial involving a single defendant."); *United States v. Sir Kue Chin*, 534 F.2d 1032, 1035 n.1 (2d Cir. 1976) ("[E]ven if the evidence could have been interpreted as showing two conspiracies, it would have been improper under the circumstances for the judge to have instructed the jury that they must acquit if they should find more than one conspiracy.").

In order to obtain a new trial on the ground that a court failed to grant a request for a multiple conspiracy charge, a defendant "must show both that there was evidence of separate networks operating independently of each other and that he suffered substantial prejudice resulting from the failure to give the requested charge." *Cusimano*, 123 F.3d at 89 (internal quotation marks omitted). Substantial prejudice exists where a "jury convicted one set of

conspirators not on the basis of the evidence relating to them, but by imputing to them guilt based on the activities of the other set of conspirators." *United States v. Toliver*, 541 F.2d 958, 962 (2d Cir. 1976). However, "refusal to give a multiple conspiracy charge does not prejudice a defendant where there was ample proof before the jury for it to find beyond a reasonable doubt that the defendant was a member of the conspiracy charged in the indictment." *United States v. Robinson*, 323 F. App'x 86, 88 (2d Cir. 2009) (summary order) (quoting *United States v. Vazquez*, 113 F.3d 383, 386 (2d Cir. 1997)).

### 2. Application

I note at the outset that Jones does not explicitly raise the argument that he was prejudiced by not receiving a multiple conspiracies instruction to the jury. Instead, Jones makes the argument, in passing, that he is entitled to a new trial because the testimony at Trial did not support his conviction on the conspiracy charged. (Def.'s Reply 1.) Assuming, for the sake of argument, that Jones had explicitly challenged the jury instructions in his Rule 33 motion, his challenge would nevertheless fail.

As an initial matter, Jones has not argued or cited evidence that supports "separate networks operating independently of each other." *Cusimano*, 123 F.3d at 89 (internal quotation marks omitted). Jones's motion for a new trial should be denied on this basis alone. In addition, to the extent that the "single/multiple conspiracy analysis" even applies in this single-defendant case at all, Jones has not, and cannot, show substantial prejudice from my decision not to give a multiple conspiracies charge. Although I declined to give a multiple conspiracies charge, I did instruct the jury that the indictment charged "a conspiracy to distribute or possess with intent to distribute controlled substances, here 1 kilogram and more of heroin and 280 grams and more of cocaine base in a form commonly known as crack," and "*that* conspiracy [was] alleged to have

existed from at least in or about 2011 up to and including in or about August 2016." (Tr. 831–32.) I also stated that, in order to find Jones guilty of the conspiracy charged in Count One, the Government had to prove, beyond a reasonable doubt, "the existence, from at least in or about 2011, up to and including in or about August 2016, of the conspiracy charged in Count One." (Tr. 834.) These instructions, among others, ensured that the jury, in convicting Jones, found him guilty of having participated in the *charged* conspiracy. In light of these instructions, which the jury is presumed to have followed, *see, e.g.*, *United States v. Snype*, 441 F.3d 119, 129–30 (2d Cir. 2006), Jones has not identified evidence of "separate networks operating independently of each other," *Cusimano*, 123 F.3d at 89 (internal quotation marks omitted), or substantial prejudice from the Court's refusal to give a multiple conspiracies instruction, *see United States v. Kaufman*, No. 13 Cr. 411-02(JMF), 2014 WL 2048198, at *9 (S.D.N.Y. May 19, 2014).

### IV. Conclusion

For the reasons stated above, Defendant's motion for a new trial is DENIED. The Clerk of the Court is respectfully directed to terminate the pending motion at Document 554.

SO ORDERED.

Dated: July 27, 2018
     New York, New York

Vernon S. Broderick
United States District Judge